UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

RONALD REID,

                Plaintiff,

- against -

THE CITY OF NEW YORK,

                Defendant.

----------------------------------------X

Action No. 1:24-cv-04164

**COMPLAINT**

**Trial By Jury Demanded**

Plaintiff Ronald Reid ("Plaintiff'), by and through his attorneys, Jacqueline McMickens & Associates PLLC, as and for his Complaint against Defendant The City of New York ("Defendant" or "City") alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for monetary damages arising from Plaintiff's employment as a Correction Officer with the New York City Department of Correction ("DOC") and DOC's retaliation against him for engaging in the protected activity of complaining that he was being discriminated by DOC on the basis of his disability, in violation of the Americans with Disabilities Act, 42 U.S.C §§12111 *et seq.* ("ADA"), the Rehabilitation Act, 29 U.S.C. §294, the New York State Human Rights Law, N.Y. Exec. Law§ 290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *er seq.* ("NYCHRL"). The Complaint also seeks monetary damages for Plaintiffs supervisors' negligent assignment of him to posts contrary to his limited working status and the injuries he sustained as a result, the award of Plaintiff's attorneys' fees and costs, and such other and further relief as this Court deems just

and proper.

## JURISDICTION AND VENUE

2. The Court has subject matter over this action pursuant to 28 U.S.C. §§1331 and 1343, as the action arises under federal statutes.

3. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims as against the Defendant that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

4. Venue of this action is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2), as it is the judicial district in which the DOC maintains an office, and in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

5. Plaintiff Ronald Reid is a resident of Kings County, New York, which is within this judicial district.

6. Defendant The City of New York is the municipal government of New York City, a branch of which is the DOC, which is responsible for the custody, control and care of the City's imprisoned population and has its principal place of business in Queens County, which is within this judicial district.

## STATEMENT OF FACTS

7. Plaintiff has been employed by the DOC as a Correction Officer since June 2017.

8. On or about July 31, 2020, Plaintiff was working at the Manhattan Detention

Center facility. On that day, he and six other corrections officers were ordered to remove an inmate from his cell.

9. As the officers entered the cell to secure the inmate, the inmate threw water on the floor and a mop at the officers. While trying to secure the inmate, Plaintiff slipped on the wet floor and injured his right knee, hip, and shoulder. As a result of the accident, the DOC assigned Plaintiff to Medically Monitored Staff Category No. 3 ("MM3"), which was fit for "limited" duty and having no contact with inmates. While on MM3 status, Plaintiff also was not allowed to do any overtime. In or about April 2021, Plaintiff had an MRI of his right knee and was advised that knee surgery was necessary.

10. On or about March 16, 2022, Plaintiff was redeployed to work at the Otis Bantum Correctional Center facility ("OBCC"), which is located on Rikers Island at 16-00 Hazen Street, East Elmhurst, N.Y. 11370. He informed the supervisor there, Captain Akilah Biggs, that he was restricted to MM3 limited duty and could have no contact with inmates. Captain Biggs assigned him to a post where she said there were no inmates. When he arrived at the post and learned that the work required inmate contact, he contacted Captain Biggs and told her that, but Biggs ordered Plaintiff to stay at that post.

11. While at that post, Plaintiff was required to leave his post to let inmates leave their cells in order to have access to water in the pantry. Some inmates let into the pantry refused to go back to their cells, and spilled milk and water on the floor of the area. Plaintiff was ordered to return prisoners to their cells and while unlocking a door, one inmate attempted to break into unauthorized areas, and Plaintiff fought with him to close the door and injured his left knee when the door closed on it. Later that shift, despite Plaintiff saying that he was not supposed to have any contact with inmates, and he was in pain from the door closing on his knee, he was directed

again, to check on inmates. When he reported to the area, he was the only officer present, but was told to allow prisoners out of their cell to go to the pantry. While doing so, he slipped on the milk and water on the floor there and injured his left hip and thigh and his lower back. Plaintiff's pain in his left knee was so severe, he went immediately to an urgent care center and saw his doctor.

12. The next day, March 17, 2022, Plaintiff sent an Intradepartmental Memorandum to Cinthia Lindblom, Acting Deputy Commissioner of the DOC describing in detail what had happened to him on the post at the OBCC as a result of his contact with the inmates the day before. He stated he suffered injuries to his left knee, hip and back and was in severe pain. In May 2022, an MRI of Plaintiffs left knee showed "partial tear of anterior cruciate ligament" with "joint effusion," and an MRI of his left hip showed "partial tear of femoroacetabular labrum with associated joint effusion." On March 2, 2023, Plaintiff underwent an arthroscopy of his left knee and a synovectomy.

13. Plaintiff submitted a Complaint of Discrimination dated April 8, 2022 to the DOC, which was reported to the Equal Employment Opportunity Commission ("EEO"). It alleged that Captain Biggs on March 16, 2022, discriminated against him on the basis of his disability and attached a 600 AR form describing the incidents on that date.

14. Less than a month later, on April 6, 2022, Plaintiff was sent back to the OBCC and Captain Biggs ordered him to the same post he had been badly injured on, despite his telling her that be had recently been injured there, and still was on MM3 status. Biggs threatened Plaintiff with a command discipline if be disobeyed her command. He worked at the post for 16 hours straight including 8 hours of overtime which he was not supposed to be doing because of his MM3 status.

15. On or about June 3, 2022, the DOC brought disciplinary charges against Plaintiff in which he was accused of "fail[ing] to efficiently perform his duties and engag[ing] in conduct unbecoming an officer and of a nature to bring discredit upon the [DOC] in that he submitted two pieces of forged/altered Log-Out documents to [Health Management Division] for medical appointments that he went to on June 22, 2021 and June 23, 2021, which appeared to be obtained from the medical office of Dr. Barry Katzman."

16. Hearing Officer Astrid B. Gloade's Report and Recommendation on the DOC's disciplinary charges against Plaintiff, redated April 13, 2023, found him not guilty on all specifications and dismissed all charges. On or about June 30, 2023, DOC Commissioner Louis Molina accepted the Hearing Officer's Report and Recommendation's findings and its recommendation of dismissal of all charges.

17. After the March 16 and April 6, 2022 incidents, Plaintiff continued to be ordered by his supervisors on at least 20 occasions to take posts at the OBCC and other facilities which were not appropriate for his MM3 status, including that he was not to have contact with inmates and not to do overtime. These assignments placed Plaintiff in situations of potential danger and bodily injury to him from the inmates and from excessive physical exertion.

18. Not having received any response to his Complaint of Discrimination based on his disability, dated April 8, 2022, Plaintiff submitted on or about August 15, 2023, a new Interdepartmental Memorandum to the DOC and a Complaint of Discrimination against the DOC based on his disability and for retaliation for filing an EEO complaint.

19. By letter dated November 3, 2023, the DOC informed Plaintiff it was administratively closing Plaintiffs complaint of discrimination on April 8, 2022 because "you were assigned to a post the Department has deemed appropriate for an officer designated as

5

MM3." After Plaintiff submitted his complaint of discrimination by the DOC to the EEOC, the U.S. Department of Justice, Civil Rights Division sent to Plaintiff a "Notice of Right to Sue Within 90 Days" letter, dated April 16, 2024.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Claim for Retaliation Under the ADA)

20. Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 through 19 as if fully set forth herein.

21. Plaintiff engaged in a protected activity under the Rehabilitation Act by sending an Interdepartmental Memorandum dated March 17, 2022, to the DOC describing how he was improperly assigned by his superior to a post involving contact with inmates on March 16, 2022, contrary to his assigned MM3 status due to his disability, and how he was injured as a result of his interactions with inmates at that post.

22. Plaintiff engaged in a protected activity under the ADA by sending a Complaint of Discrimination dated April 8, 2022 to the DOC and the EEO, alleging he was discriminated against by the DOC on the basis of his disability by his assignment to the post and interactions with inmates on March 16, 2022.

23. The DOC had knowledge of Plaintiff's submission of the Interdepartmental Memorandum dated March 17, 2022 and the Complaint of Discrimination dated April 8, 2022.

24. The DOC took an action adverse to Plaintiff by bringing disciplinary charges against him on or about June 3, 2022, accusing him of engaging in conduct unbecoming an officer and of a nature to bring discredit upon the Department in submitting "forged" documents regarding his medical appointments. The DOC dismissed the charges against Plaintiff in their entirety on or about June 30, 2023.

25. The DOC also took actions adverse to Plaintiff by continuing to frequently reassign him to posts that brought him into contact with inmates or required him to work overtime, contrary to his acknowledged MM3 status.

26. A causal connection exists between Plaintiffs submission of complaints to the DOC and EEO that he was discriminated against because of his disability, and the DOC's disciplinary charges brought against Plaintiff for conduct unbecoming an officer and of a nature to bring discredit on the DOC, less than two months after the April 8, 2022 complaint.

27. A causal connection exists between Plaintiffs submission of complaints to the DOC and EEO that he was discriminated against because of his disability and the DOC's frequent assignments to work on posts that were inappropriate for his MM3 status.

28. Therefore, Plaintiff has been retaliated against by the DOC for engaging in protected activity, in violation of 42 U.S.C. §12112 of the ADA.

29. As a result of this violation, Plaintiff has suffered damages, including but not limited to injury from excessive physical exertion, mental anguish, and denial of employment benefits.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Claim for Retaliation Under the Rehabilitation Act)

30. Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 through 29 as if fully set forth herein.

31. Plaintiff's employment with the DOC was an activity or program protected by the Rehabilitation Act, 29 U.S.C. §294, in that DOC is a department or agency of a municipal government.

32. Plaintiff engaged in a protected activity under the Rehabilitation Act by sending

an Interdepartmental Memorandum dated March 17, 2022, to the DOC describing how he was improperly assigned by his superior to a post involving contact with inmates on March 16, 2022, contrary to his assigned MM3 status due to his disability, and how he was injured as a result of his interactions with inmates at that post.

33. Plaintiff engaged in a protected activity under the Rehabilitation Act by sending a Complaint of Discrimination dated April 8, 2022, to the DOC and the EEO, alleging he was discriminated against by the DOC on the basis of his disability by his assignment to the post and interactions with inmates on March 16, 2022.

34. The DOC had knowledge of Plaintiff's submission of the Interdepartmental Memorandum dated March 17, 2022, and the Complaint of Discrimination dated April 8, 2022.

35. The DOC took an action adverse to Plaintiff by bringing disciplinary charges against him on or about June 3, 2022, accusing him of engaging in conduct unbecoming an officer and of a nature to bring discredit upon the Department in submitting forged documents regarding his medical appointments. After a trial was held, the DOC dismissed the charges against Plaintiff in their entirety on or about June 30, 2023.

36. The DOC also took actions adverse to Plaintiff by continuing to frequently reassign him to posts that brought him into contact with inmates or required him to work overtime, contrary to his acknowledged MM3 status.

37. A causal connection exists between Plaintiffs submission of complaints to the DOC and EEO that he was discriminated against because of his disability and the DOC's disciplinary charges brought against Plaintiff for conduct unbecoming an officer and of a nature to bring discredit on the DOC, less than two months after the April 8, 2022 complaint.

38. A causal connection exists between Plaintiffs submission of complaints to the

8

DOC and EEO that he was discriminated against because of his disability and the DOC's frequent assignments to work on posts that were inappropriate for his MM3 status.

39. Therefore, Plaintiff has been retaliated against by the DOC for engaging in protected activity, in violation of 29 U.S.C. §294 of the Rehabilitation Act.

40. As a result of this violation, Plaintiff has suffered damages, including but not limited to injury from excessive physical exertion, mental anguish, and denial of employment benefits.

## AS AND FOR A TIDRD CAUSE OF ACTION
### (Claim for Retaliation Under the NYSHRL)

41. Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 through 40 as if fully set forth herein.

42. Plaintiff engaged in a protected activity under the NYSHRL by sending an Interdepartmental Memorandum dated March 17, 2022, to the DOC describing how he was improperly assigned by his superior to a post involving contact with inmates on March 16, 2022, contrary to his assigned MM3 status due to his disability, and how he was injured as a result of his interactions with inmates at that post.

43. The DOC had knowledge of Plaintiffs submission of the Interdepartmental Memorandum dated March 17, 2022 and the Complaint of Discrimination dated April 8, 2022.

44. The DOC took an adverse employment action against Plaintiff by bringing disciplinary charges against him on or about June 3, 2022, accusing him of engaging in conduct unbecoming an officer and of a nature to bring discredit upon the Department is submitting forged documents regarding his medical appointments. After a trial was held, the DOC dismissed the charges against Plaintiff in their entirety on or about June 30, 2023.

45. The DOC also took actions adverse to Plaintiff by continuing to frequently reassign him to posts that brought him into contact with inmates or required him to work overtime, contrary to his acknowledged MM3 status.

46. A causal connection exists between Plaintiff's submission of complaints to the DOC and EEO that he was discriminated against because of his disability and the DOC's disciplinary charges brought against Plaintiff for conduct unbecoming an officer and of a nature to bring discredit on the DOC, less than two months after the April 8, 2022 complaint.

47. A causal connection exists between Plaintiffs submission of complaints to the DOC and EEO that he was discriminated against because of his disability and the DOC's frequent assignments to work on posts that were inappropriate for his MM3 status.

48. Therefore, Plaintiff has been retaliated against by the DOC for engaging in protected activity, in violation of the N.Y. Executive Law §296 of the NYSHRL.

49. As a result of this violation, Plaintiff has suffered damages, including but not limited to injury from excessive physical exertion, mental anguish, and denial of employment benefits.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Claim for Retaliation Under NYCHRL)

50. Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 through 49 as if fully set forth herein.

51. Plaintiff engaged in a protected activity under the NYSHRL by sending an Interdepartmental Memorandum dated March 17, 2022, to the DOC describing how he was improperly assigned by his superior to a post involving contact with inmates on March 16, 2022, contrary to his assigned MM3 status due to his disability, and how he was injured as a result of

his interactions with inmates at that post.

52. The DOC had knowledge of Plaintiffs submission of the Interdepartmental Memorandum dated March 17, 2022 and the Complaint of Discrimination dated April 8, 2022.

53. The DOC took an action that disadvantaged Plaintiff by bringing disciplinary charges against him on or about June 3, 2022, accusing him of engaging in conduct unbecoming an officer and of a nature to bring discredit upon the Department in submitting forged documents regarding his medical appointments. After a trial was held, the DOC dismissed the charges against Plaintiff in their entirety on or about June 30, 2023.

54. The DOC also took actions that disadvantaged Plaintiff by continuing to frequently reassign him to posts that brought him into contact with inmates or required him to work overtime, contrary to his acknowledged MM3 status.

55. A causal connection exists between Plaintiffs submission of complaints to the DOC and EEO that he was discriminated against because of his disability and the DOC's disciplinary charges brought against Plaintiff for conduct unbecoming an officer and of a nature to bring discredit on the DOC, less than two months after the April 8, 2022 complaint.

56. A causal connection exists between Plaintiffs submission of complaints to the DOC and EEO that he was discriminated against because of his disability and the DOC's frequent assignments to work on posts that were inappropriate for his MM3 status.

57. Therefore, Plaintiff has been retaliated against by the DOC for engaging m protected activity, in violation of the N.Y.C. Executive Law §8-107(1) of the NYCHRL.

58. As a result of this violation, Plaintiff has suffered damages, including but not limited to injury from excessive physical exertion, mental anguish and denial of employment benefits.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Claim for Negligent Work Assignment of Plaintiff)

59. Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 through 58 as if fully set forth herein.

60. On or about March 16, 2022, Captain Akilah Biggs, who was Plaintiffs supervisor, directed Plaintiff to a post at the OBCC that she knew or should have known would involve strenuous work activity and his interactions with inmates, which could expose him to an unreasonable risk of harm.

61. Plaintiff had informed Captain Biggs at the time of his assignment that he had been placed on MM3 status which restricted him to light work activity and no contact with inmates. After he arrived at the post and realized it would involve contact with inmates, Plaintiff again contacted Captain Biggs and informed her that he was not allowed to work under such conditions. She ordered that he remain at the post.

62. As a result of his work at the post that day, which included restraining and restricting inmates who were allowed out of their cells, he suffered injuries to his left knee, hip, and lower back from closing a door and slipping and falling on the floor.

63. On or about April 6, 2022, Captain Biggs, who was Plaintiffs supervisor, assigned him to the same post at the OBCC as he was on March 16, 2022. When he informed her that he had been injured because of his interactions with inmates at this same post three weeks before and he was still restricted in the work he could do by his MM3 status, Captain Biggs threatened Plaintiff with getting a command discipline if he did not go to the post.

64. On at least 20 subsequent occasions, Plaintiffs supervisors ordered him to take posts at the OBCC and other facilities which were not appropriate for his MM3 status, including

that he was not to have contact with inmates and was not to do overtime.

65. Plaintiff's supervisors, including Captain Biggs on March 16, 2022, had a duty of care to assign Plaintiff to posts commensurate with limited work status and acknowledge Plaintiff not being capable of having contact with inmates. By those supervisors' assignment of Plaintiff to posts at OBCC and elsewhere, while knowing that Plaintiff would be exposed to physical harm and danger from interactions with inmates and from excessive exertions, she breached her duty of care to Plaintiff.

66. Therefore, the DOC, by and through Plaintiffs supervisors, including Captain Biggs, breached the duty of care to Plaintiff by assigning him on March 16, 2022 and at other times to work at posts contrary to his limited work status which provides that no contact with inmates is allowed, and which posed an unreasonable risk of harm to him.

67. As substantially caused by Defendant's breaches of care, Plaintiff's personal injuries, surgeries and procedures, pain and suffering, fear, and limitations and impairments in his activities.

**WHEREFORE,** Plaintiff Ronald Reid demands the following relief against Defendant The City of New York:

i) On the First, Second, Third and Fourth Causes of Actions, monetary damages for DOC's retaliation against Plaintiff, including but not limited to injury from excessive physical exertion, mental anguish, and denial of employment benefits;

ii) On the Fifth Cause of Action, monetary damages for Plaintiffs personal injuries, surgeries and procedures, pain and suffering, mental anguish, and limitations and impairments in his activities from DOC's negligent assignment of Plaintiff to posts that were improper based on his MM3 status and limitations;

iii) On the First, Second, Third, Fourth and Fifth Causes of Action, monetary damages

        in excess of one hundred fifty thousand dollars ($150,000.00);

iv)   An award of Plaintiff's costs, expenses and attorney's fees to Plaintiff in bringing and prosecuting this action; and

v)   Such other and further relief as this Court may deem just and proper.

Dated:   Brooklyn, N.Y.
          June 7, 2023

                                              Yours, etc.

By: _____
                                      Jacqueline McMickens, Esq.
                                      JACQUELINE McMICKENS &
                                          ASSOC., PLLC
                                      *Attorneys for Plaintiff Ronald Reid*
                                      26 Court Street, Suite 1600
                                      Brooklyn, N.Y. 11242
                                      Tel: (718) 596-4877
                                      Fax: (718) 596-5009
                                      Email: jmcmickens@aol.com

## CERTIFICATION

Pursuant to Local Civil Rule of the United States District Court for the Eastern District of New York 83.7(d)(3), the undersigned, counsel for Plaintiff Ronald Reid in the attached Complaint, certifies that the monetary damages, exclusive of interest and costs, sought by Plaintiff in this action is in excess of one hundred fifty thousand dollars ($150,000.00).

Dated: Brooklyn, New York
June 7, 2024

Jacqueline McMickens